## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| CHRISTINA D., *Plaintiff,* v. COMMISSIONER OF SOCIAL SECURITY, *Defendant.* | Case No. 1:24-cv-01204-RLH |

### ORDER & OPINION

Plaintiff Christina D. filed this suit to challenge an administrative law judge's finding that she is not disabled under the Social Security Act and thus ineligible to receive disability benefits. The parties have consented to final disposition of this case by a U.S. Magistrate Judge. (*See* Doc. 7.) Upon review, the Court finds that the ALJ's opinion was supported by substantial evidence, so the Court affirms.

### LEGAL STANDARDS

**I.    The Social Security Act**

The Social Security Act—and the regulations adopted under it—explain in detail who is eligible to receive social security benefits. To qualify, a claimant must be sixty-five years of age, blind, or disabled. 20 C.F.R. § 416.202(a)(1)–(3). A claimant is disabled if she cannot "do any substantial gainful activity" because she suffers from "any medically determinable physical or mental impairment" that is either life-threatening or chronic. 42 U.S.C. § 423(d)(1)(A).

To implement that definition, the Social Security Administration has developed a five-step evaluation process. *See* 20 C.F.R. § 416.920(a)(1). The steps proceed sequentially:

> **Step One.** Is the claimant currently engaged in substantial gainful activity?
>
> **Step Two.** Does the claimant have a severe mental or physical impairment—i.e., an impairment that significantly limits their ability to do basic work activities—or a combination of them?
>
> **Step Three.** Does the mental or physical impairment appear on an enumerated list (called "listings")? If not, is it nonetheless medically equal to one of those listings?
>
> **RFC Assessment.** What is the claimant's residual functional capacity (RFC)—that is, the most they can still do despite their limitations?
>
> **Step Four.** Based on the claimant's RFC, can they perform their past work?
>
> **Step Five.** Based on the claimant's RFC, can they perform other work?

*See id.* § 416.920(a)(4)(i)–(v). The ALJ begins, of course, at step one. If it yields an affirmative answer (i.e., the claimant is working), the claimant is not disabled, and the inquiry ends. If step two yields a negative answer (i.e., the claimant does not have a severe impairment), the claimant is not disabled, and the inquiry ends. *See id.* §416.920(a)(4)(i)–(ii). Step three, however, is dispositive: If the claimant's impairment appears on a listing, the claimant is considered disabled and eligible for benefits. *See id.* § 416.920(a)(4)(iii). If the claimant's impairment does not appear on or medically equal a listing, the ALJ crafts an "RFC Assessment," which analyzes "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from [their] impairment." *Moore v. Colvin*, 743 F.3d 1118, 1121

(7th Cir. 2014). If either steps four or five yield an affirmative answer (i.e., the claimant can perform their old job or adjust to a new one in light of the RFC), the claimant is not disabled. *See* 20 C.F.R. § 416.920(a)(4)(iv)–(v).

The claimant has the burdens of production and persuasion through step four. *See Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022). At step five, the burden shifts to the Commissioner to show that the claimant can engage in some type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

## II.  Standard of Review

A court's function on review is limited to determining whether the ALJ's findings are supported by substantial evidence and based upon proper legal criteria. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Thus, Courts may not try the case de novo or supplant the ALJ's factual findings with their own. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). As such, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence, in turn, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (explaining that the threshold "is not high"); *Schneck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) ("Substantial evidence may be less than the weight of the evidence, and more than a scintilla." (citation modified)). Yet, although the ALJ's

decision commands deference, courts may not simply "rubber stamp" it. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).

The Seventh Circuit has emphasized that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Instead, ALJ's need only "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow . . . a reviewing court, to assess the validity of the agency's ultimate findings and afford [the plaintiff] meaningful judicial review.'" *Id.* at 1054 (alteration in original) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary"—not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). Therefore, courts reviewing for substantial evidence may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [their] judgment for the ALJ's determination so long as substantial evidence supports" the decision under review. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). In short, the ALJ must build "an accurate and logical bridge" between the evidence in the record and his conclusions. *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013).

## BACKGROUND

**I.    Christina**

Christina was born in 1991, (R. at 945[1]), and has received her high school diploma. (R. at 717). She previously worked for Club Demonstration Services handing out samples to Costco shoppers. (R. at 713.) She was last employed in February 2022. (R. at 713.)

**II.    Procedural History**

In September 2021, Christina applied to the Social Security Administration for supplemental security income, alleging that she has been disabled since January 1, 2021. (R. at 28.) Her application was initially denied in June 2022 and denied upon reconsideration in October. (R. at 28.) She then requested a hearing before an ALJ, (R. at 28), which took place in June 2023, (R. at 45.) Present at that hearing were Christina, her attorney, and a vocational expert. (R. at 45.)

After the hearing, the ALJ issued a written opinion concluding that Christina was not disabled and therefore not entitled to disability benefits. (R. at 38.) In response, Christina sought review of the ALJ's decision with the Appeals Council, but her request was denied. (R. at 1.) Christina then filed a complaint in this Court to challenge the ALJ's decision, (Doc. 1), along with a motion to proceed in forma pauperis, (Doc. 2). The Court granted her IFP motion, (*see* Text Order Dated June 6,

---

[1] "R." refers to the Certified Administrative Record filed on August 2, 2024. (Doc. 5.) The page numbers cited in this Report and Recommendation refer to the black page numbers at the bottom right of the transcript, rather than the green page numbers generated automatically by CM/ECF at the top right of the page.

2024), and Christina filed her brief in September 2024, (Doc. 9.) The Commissioner responded in November. (Doc. 14).

### III. The ALJ's Decision

In his opinion, the ALJ used the five-step evaluation process outlined above to determine whether Christina was disabled. At step one, he determined that Christina has not engaged in "substantial gainful activity" since September 27, 2021—her application date. (R. at 30.) At step two, the ALJ found that Christina had the following severe impairments: (1) psychogenic non-epileptic spells; (2) vision disorder (i.e. monocular vision); (3) obesity; and (4) anxiety. (R. at 30.) At step three, the ALJ concluded that none of those impairments met or medically equaled any of the listed impairments. (R. at 31–33.) Before proceeding to steps four and five, the ALJ crafted the following RFC assessment:

> [Christina] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She must avoid environmental hazards such as unprotected heights and dangerous machinery. She must avoid concentrated exposure to loud and very loud noises. She can perform work activity requiring monocular vision. She can understand, remember, and carry out simple instructions. She can make simple work-related decisions with only occasional changes to a routine work setting. She can have no interaction with the public. She can have occasional interaction with co-workers and supervisors.

(R. at 33.) At step four, the ALJ found that Christina lacked past relevant work. (R. at 37.) Finally, at step five, the ALJ concluded that Christina's RFC would allow her to perform jobs in the national economy, including "Sorter," "Laundry Worker," and "Classifier." (R. at 37.) Based on the ALJ's conclusion at step five, he determined that Christina is not disabled. (R. at 38.)

6

## DISCUSSION

Christina challenges the ALJ's opinion on a single ground: He did not find her as disabled as her testimony suggested she was. The Commissioner responds that the ALJ properly considered the medical evidence and that his opinion was therefore supported by substantial evidence. For the reasons set forth below, the ALJ provided specific reasons for rejecting Christina's testimony, so the Court affirms.

I. **The ALJ Was Entitled to Reject Christina's Subjective Account of Her Symptoms**

In arriving at Christina's RFC, the ALJ observed that Christina regularly performs daily activities like meal preparation, grocery shopping, and other household chores. (*See* R. at 34.) Drawing on that observation, the ALJ concluded that Christina's ability to perform those activities "leads [him] to believe that" Christina's "impairments are not as severe" as she claims they are. (R. at 35.) Christina challenges that line of reasoning and maintains that the ALJ's "failure to account for the limited manner in which" she "performed her daily activities" cannot support the ALJ's rejection of her subjective complaints. (Pl. Br. 4.[2]) In other words, the *fact* that she could perform some daily activities to some extent does not, in and of itself, refute Christina's own account of the severity of her symptoms.

It is settled that "[s]ubjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). Instead, ALJ's must "consider a number of factors" in addressing a claimant's account

---

[2] "Pl. Br." refers to Plaintiff's opening brief, filed September 16, 2024. (Doc. 9.)

of their symptoms, including relevant medical evidence, prior work, and daily activities.[3] *Id.* To be sure, an "ALJ need not discuss every detail in the record as it relates to every factor." *Id.* Rather, the ALJ must provide "specific reasons supported by the record" for discounting a claimant's subjective account of their symptoms. *Id.* at 1279. So long as the ALJ gives those reasons, courts "will not overturn" an ALJ's rejection of a claimant's subjective account "unless it is patently wrong." *Id.*

At the hearing, Christina testified that she could not perform an office job primarily because of her seizures, which she experiences two to four times per month. (R. at 34.) She claimed that she cannot predict when a seizure will occur and that she needs between sixty and ninety minutes to recover from them. (R. at 34.) Of course, the ALJ was not required—or indeed, even *allowed*—to adopt Christina's testimony without question. But in rejecting it, the ALJ was required to give specific reasons for doing so. A review of the ALJ's opinion demonstrates that he gave at least three.

First, the ALJ found that the medical evidence did not support Christina's testimony. Indeed, the ALJ found that the "overall medical evidence . . . shows mostly to normal to mild examination findings, and it shows normal EEG findings." (R. at 35.) The ALJ observed that Christina was admitted to the emergency room following a seizure in November 2021 and February 2022. (R. at 35.) During her visits, she was examined and found to be "within normal limits," her "head CT was normal," and a

---

[3] The full list of factors include: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate their pain or other symptoms; (v) treatment, other than medication, the claimant receives or has received for relief of their pain or other symptoms; (vi) any measures the claimant uses or has used to relieve their pain or other symptoms; and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3).

8

neurologist opined that Christina could perform an office job. (R. at 35; *see also* R. at 36 (explaining that at a May 2023 neurologist appointment Christinas's "examination was within normal limits," that she "continue[d] on her medications," and received a normal EEG test.").) In other words, although Christina did in fact receive treatment for her seizures, the results of the objective examinations were normal. "This evidence," the ALJ reasoned, "supports a finding that [Christina] can perform work activity," with certain restrictions. (R. at 35.) *See also Grotts*, 27 F.4th at 1278 (explaining that ALJ's must consider the claimant's subjective account of their symptoms in light of, among other things, "relevant medical evidence").

Second, the ALJ discussed the medical opinions and prior administrative findings. He found the state agency physical assessments—which limited plaintiff to light work with other limitations—"persuasive" because they were "consistent with and supported by evidence of record showing the claim's seizure problems." (R. at 36.) He rejected the state agency psychological assessment at the initial level as "not persuasive," reasoning that the objective evidence "supports finding *greater* limitations." (R. at 36 (emphasis added).) And he found the state agency psychological assessment at the reconsideration level "persuasive" because it was consistent with the medical evidence. (R. at 36.) Thus, the two opinions that the ALJ found persuasive bolstered his conclusion that Christina could perform light work with additional physical and psychological limitations. (*See* R. at 36.) Christina did not offer any medical opinion of her own to cast doubt on the ALJ's reliance on these opinions, nor does she question the ALJ's reasoning on this score.

9

Third and finally, the ALJ found that Christina's ability "to perform her activities of daily living" undermined her testimony. (R. at 35.) Christina completed a "Function Report" that asked her to explain her ability to complete day-to-day activities. (*See* R. at 181–88.) In that report, Christina explained that she could "perform[] personal care, prepar[e] simple meals, do[] household chores, go[] to the store, hav[e] hobbies, control[] her finances, spend[] time with others, attend[] to her provider appointments, and follow[] instructions." (R. at 35.) Christina's ability to perform these tasks, the ALJ reasoned, undermined her testimony that her seizures and other impairments prevented her from performing an office job. (*See* R. at 35.) And the ALJ was well within his authority to take Christina's function report into account in crafting her RFC. *See Grotts*, 27 F.4th at 1278; *Simila v. Astrue*, 573 F.3d 503, 518 (7th Cir. 2009) (discounting claimant's subjective account of symptoms as inconsistent with claimant's daily activities); *Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022) ("[I]t is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated." (quoting *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016).)

Accordingly, the ALJ provided "specific reasons," *Grotts*, 27 F.4th at 1279, for rejecting Christina's testimony about her symptoms—namely, because it was not supported by objective medical evidence, state agency opinions, and her daily activities. His opinion thus demonstrates that he considered Christina's daily

10

activities as *one factor* in evaluating her testimony. And because the ALJ's analysis on this point was not "patently wrong," *id.*, the Court's analysis ends there.

## II. Christina's Counterarguments

Christina's remaining arguments are unpersuasive. First, Christina quotes *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012), for the proposition that the Seventh Circuit has "repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full time." (Pl. Br. 3.) But that quote appears neither in *Bjornson* nor any of the other cases Christina cites in that paragraph of her brief.[4] In any case, Christina is correct to say that "the activities of daily living" do not necessarily translate into "the requirements of a modern workplace." *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011). For that reason, an ALJ is not entitled to simply equate daily activities with "work in the labor market." *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005).

But that is not what the ALJ here did. The most that can be said about *Bjornson*, *Punzio*, and *Gentle* is that an ALJ may not deny a claim for benefits *solely* because a claimant can perform some daily activities. By the same token, however, the regulations explicitly instruct ALJ's to consider "daily activities" as *one relevant factor* in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3)(i); *see also Loveless*, 810 F.3d at 508 ("[Claimant's] ability to engage in . . . daily activities was not conclusive proof that he was able to sustain full-time work

---

[4] It appears that this exact language comes from *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013), which in turn cited *Bjornson*.

but instead was *one factor that weighed against* his account of disabling limitations. (emphasis added).) As discussed, Christina's daily activities were one factor—along with the objective medical evidence and state agency opinions—that the ALJ considered before he discounted her subjective account of her symptoms.

Christina also criticizes the ALJ for "wholly fail[ing] to account for how" she accomplishes her daily tasks. (Pl. Br. 4.) But as the Commissioner observes, Christina's argument "ends there." Christina does not identify what difficulties—if any—she has in performing her daily tasks. Nor does she explain how the manner in which Christina shops for groceries, prepares meals, or performs other activities would have undermined the ALJ's analysis. In short, Christina's conclusory statement that the ALJ did not analyze her daily activities in sufficient depth—without specifying what the ALJ overlooked—provides no grounds for remand. (*See generally* Pl. Br. 3–5.)

Accordingly, Christina's assertion that the ALJ "failed to set forth any legitimate reason for discounting" her "subjective symptoms" is without merit. (Pl. Br. 5.) The ALJ's opinion demonstrates that he considered the medical evidence, the state agency opinions, and Christina's daily activities in crafting her RFC. His opinion was therefore supported by substantial evidence. *See* 42 U.S.C. § 405(g).

## CONCLUSION

The Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to enter judgment and close this case.

*So ordered.*

Entered this 18th day of February 2026.

s/ Ronald L. Hanna
Ronald L. Hanna
United States Magistrate Judge
